JUDGE FORREST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV          9283

---

BRENNEN HYATT, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

      vs.

VIVINT SOLAR, INC., THE BLACKSTONE
GROUP L.P., GREGORY S. BUTTERFIELD,
DANA C. RUSSELL, DAVID F.
D'ALESSANDRO, ALEX J. DUNN, BRUCE
McEVOY, TODD R. PEDERSEN, JOSEPH F.
TRUSTEY, PETER F. WALLACE, JOSEPH
S. TIBBETTS, GOLDMAN, SACHS & CO.,
MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, CREDIT SUISSE
SECURITIES (USA) LLC, CITIGROUP
GLOBAL MARKETS INC., DEUTSCHE
BANK SECURITIES INC., MORGAN
STANLEY & CO. LLC, BARCLAYS
CAPITAL INC. and BLACKSTONE
ADVISORY PARTNERS L.P.,

                 Defendants.

---

Civil Action No.

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL



Plaintiff Brennen Hyatt ("plaintiff") alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Vivint Solar, Inc. ("Vivint" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the common stock of Vivint pursuant and/or traceable to the Registration Statement issued in connection with Vivint's October 1, 2014 initial public stock offering (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o]. This Court has jurisdiction over this action pursuant to §22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

3.      Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b). The acts and conduct complained of herein occurred in substantial part in this District. In addition, defendant The Blackstone Group L.P., which controls Vivint, is headquartered in this District and the Underwriter Defendants, defined below, either maintain their principal places of business in this District or conducted substantial activities in connection with the IPO in this District.

4.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

5.     Plaintiff Brennen Hyatt purchased Vivint common stock pursuant and/or traceable to the IPO, as set forth in the certification attached hereto and incorporated by reference herein, and was damaged thereby.

6.     Defendant Vivint is a residential solar energy unit installer that leases solar energy systems to residential homeowners.  Following the IPO, Vivint stock traded on the New York Stock Exchange under the ticker symbol "VSLR."

7.     Defendant The Blackstone Group L.P. ("Blackstone"), based in New York City, is an investment firm and the world's largest alternative asset manager.  By virtue of is 97% pre-IPO and 78% post-IPO ownership interest of Vivint common stock, defendant Blackstone is Vivint's controlling shareholder. Blackstone's alternative asset management business includes the management of corporate private equity funds, real estate funds, hedge fund solutions, credit-oriented funds and closed-end mutual funds. Blackstone also provides various financial advisory services, including financial and strategic advisory, restructuring and reorganization advisory and fund placement services. Through its different investment businesses, as of June 30, 2014, Blackstone had assets under management of approximately $279 billion.

8.     Defendant Gregory S. Butterfield ("Butterfield") is, and was at the time of the IPO, Chief Executive Officer ("CEO"), President and a director of Vivint.

9.     Defendant Dana C. Russell ("Russell") is, and was at the time of the IPO, Chief Financial Officer ("CFO") of Vivint.

10.     Defendants David F. D'Alessandro, Alex J. Dunn, Bruce McEvoy, Todd R. Pedersen ("Pedersen"), Joseph F. Trustey, Peter F. Wallace and Joseph S. Tibbetts are, and were at the time of the IPO, directors of Vivint.

11.     The defendants named in ¶¶8-10 are referred to herein as the "Individual Defendants."   The Individual Defendants each signed the Registration Statement issued in connection with the IPO.

12.     Defendants Goldman, Sachs & Co. ("Goldman"), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Deutsche Bank Securities Inc., Morgan Stanley & Co. LLC, Barclays Capital Inc. and Blackstone Advisory Partners L.P. ("Blackstone Advisory Partners") (collectively the "Underwriter Defendants") are financial services companies that acted as underwriters and joint managers of Vivint's IPO, helping to draft and disseminate the offering documents.   Each of the Underwriter Defendants maintains either their principal place of business or executive offices in this District.

13.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize, *inter alia*, in underwriting public offerings of securities. They served as the underwriters of the IPO and shared more than $20 million in fees collectively. The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to merchandize Vivint stock in the IPO. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Vivint, met with potential investors and presented highly favorable information about the Company, its operations, and its financial prospects.

(b)     The Underwriter Defendants also demanded and obtained an agreement from Vivint that it would indemnify and hold them harmless from any liability under the federal securities laws. They also made certain that Vivint had purchased millions of dollars in directors' and officers' liability insurance.

(c)     Representatives of the Underwriter Defendants also assisted Vivint and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Vivint, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Vivint's operations and financial prospects.

(d)     In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Vivint's lawyers, management and top executives and engaged in "drafting sessions" between at least May 2014 and October 2014. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Vivint stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Vivint would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Vivint management and top executives, the Underwriter Defendants knew, or should have known, of Vivint's existing problems as detailed herein.

(e)     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

14.     Defendant Vivint, through its operating subsidiary Vivint Solar, is a solar electricity provider that designs, installs and maintains residential and commercial photovoltaic systems. Since its inception, most of Vivint's residential solar installation growth has been generated from door-to-door sales. The original idea for Vivint to enter the solar market was proposed by Michael Feldman, then a managing director at defendant Goldman. After seeing first-hand the effectiveness of engaging people face-to-face, he proposed a solar marketing model that relied heavily on the door-to-door sales pitch. After several months of discussions, the Company was founded by defendant Pedersen. Today, door-to-door sales remain the center of Vivint's sales channel.

15.     Vivint operates in seven states (Arizona, New Jersey, Massachusetts, Hawaii, Maryland, New York and California), with expansive marketing programs in each of those markets. According to GTM Research, Vivint Solar was the number two residential solar installer in the United States in 2013, next to behemoth SolarCity, which claims to have more market share than its next 50 competitors combined.

16.     Historically, Vivint has installed its solar panels at no cost to the homeowner, via a 20-year power purchase agreement ("PPA"). Vivint (and the investment funds it works with) owns, installs and maintains the residential solar systems in exchange for the residential customers agreeing to purchase the solar energy the panels on their roofs produce from Vivint. Customers do not pay for installation, only for the energy that the panels produce for the life of the contracts, at rates that are purportedly initially substantially lower than their previous electric utility charges. Vivint locks in the customer's rate for power produced by the system over the 20-year period of the PPA, so even if

the local utility rates increase or decrease, the customer's Vivint rate increases at the fixed amount defined in the PPA. The PPAs contain price "accelerators" though, that increase the prices paid over the life of the 20-year contract. The Company has historically accounted for these relationships with its residential solar customers as long-term leases of its equipment. The Company has recently begun selling what it now formally calls long-term leases.

17.     In 2012, defendant Blackstone and a group of co-investors acquired Vivint's three main assets in a $1.9 billion leveraged buyout, investing $714 million of equity.

18.     On or about May 14, 2014, Vivint filed a draft Registration Statement on Form S-1 (File No. 333-198372) with the SEC, which following several amendments in response to comments by the SEC, would later be utilized for the IPO. On September 30, 2014, at 4:00 p.m. ET, the SEC declared the Registration Statement effective. On or about September 30, 2014, Vivint and the Underwriter Defendants priced the IPO and then filed the final Prospectus for the IPO, which forms part of the Registration Statement (collectively, the "Registration Statement"), with the SEC on October 1, 2014.

19.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

20.     Specifically, the Registration Statement emphasized that "[t]he solar energy systems [the Company] install[s] are eligible for investment tax credits, or ITCs, accelerated tax depreciation and other governmental incentives," and that "[s]olar energy system owners [were then] currently allowed to claim a tax credit that [was] equal to 30% of the system's eligible tax basis, which is generally the fair market value of the system," despite the fact that ownership trends had changed in

the residential solar energy industry prior to the IPO and residential solar customers were then opting to purchase the solar energy system themselves through financing arrangements that Vivint's competitors had made readily available, rather than entering into long-term leases with Vivint and allowing Vivint and its investors to obtain the associated tax and related benefits.

21.     Concerning the stability of its business model and ongoing demand for the Company's long-term residential solar unit leases then being experienced, the Registration Statement emphasized Vivint's *"Long-term, highly visible, recurring cash flow"* and stated that Vivint "enable[d] [its] customers to access the advantages of solar energy with little to no upfront costs to them through long-term contracts *that generate recurring, predictable customer payments to*" the Company, and that its "20-year customer contracts generate[d] *predictable, recurring cash flows* and establish[ed] a long-term relationship with homeowners," without disclosing that ownership trends had changed and that the tax credits that Vivint had relied upon to drive its revenue growth were no longer as readily available.

22.     Concerning the Company's efforts to "[f]urther penetrat[e] [its] existing markets," the Registration Statement affirmatively stated that the Company then "believe[d] the markets in which [it] currently operate[d] continue[d] to be significantly *underpenetrated*, and [that it] intend[ed] to increase [its] presence in these markets by introducing [its] solar energy systems into new neighborhoods and communities in states in which [it] already ha[d] operations" and "to leverage [its] brand and existing customer base *to grow in these markets at lower customer acquisition and installation costs relative to [its] competitors*," without disclosing that ownership trends had changed and that residential solar customers were increasingly seeking financing relationships that led to direct ownership (and retention of tax and related benefits) rather than entering into long-term leases.

23.     The Registration Statement claimed that Vivint's "direct sales model and integrated approach represent[ed] a differentiated platform, unique in the industry that . . . *dr[ove] cost efficiency*," and that its business "model reduce[d] system installation costs given the efficiencies associated with working in a concentrated area," without disclosing that the Company's operating expenses had actually grown substantially in the third quarter of 2014, without a proportional growth in revenues, significantly increasing losses in the quarter that had ended on September 30, 2014, one day before the IPO.

24.     The Registration Statement also claimed that the Company was then "*[c]apitalizing on opportunities to . . . lower costs*" by "making additional investments in new technologies related to [its] system design and installation and ongoing customer service practices," which would "enable [it] to *continue to improve [its] operating efficiency*" and "*cost structure*," without disclosing that, conversely, the Company's costs had grown substantially in the third quarter of 2014, which had ended September 30, 2014, one day prior to the IPO.

25.     The statements referenced above in ¶¶20-24 were inaccurate statements of material fact because they failed to disclose the following material facts that existed at the time of the IPO:

(a)     despite the fact that the Company's historically lower costs of capital were detrimentally reliant upon continuing its traditional long-term leasing business model, ownership trends had changed in the residential solar industry prior to the IPO and residential solar customers were increasingly seeking financing, and to maintain the tax and related benefits for themselves, rather than entering into long-term leases;

(b)     demand for new long-lease sales had declined in the third quarter of 2014, which ended September 30, 2014, one day prior to the IPO;

(c)     Vivint's operating expenses had significantly increased in the third quarter of 2014 and revenues had not increased concomitantly, resulting in substantially increased net losses in the third quarter of 2014, which ended September 30, 2014, one day prior to the IPO; and

(d)     as a result of the foregoing, the Company was not on track to achieve the financial results defendants had led the market to believe Vivint was on track to achieve in the Registration Statement.

26.     Under the rules and regulations governing the preparation of the Registration Statement, Vivint was required to disclose at the time of the IPO that ownership trends in the residential solar industry had changed from long-term leasing to financing, that demand for long-term leases had declined, and that growth in the Company's operating expenses in the third quarter of 2014 had significantly outstripped growth in revenue, resulting in much weaker sales trends and significantly larger net losses than the market had been led to expect. The Registration Statement, however, contained no such disclosures. Pursuant to Item 303 of Regulation S-K [17 C.F.R. §229.303], and the SEC's related interpretive releases thereto, issuers are required to disclose events or uncertainties, including any known trends, that have caused, or are reasonably likely to cause, the registrant's financial information not to be indicative of future operating results. At the time of the IPO, the adverse events and uncertainties associated with the trends described above were reasonably likely to have a material impact on Vivint's profitability and, therefore, were required to be disclosed in the Registration Statement.

27.     The IPO was successful for the Company and the Underwriter Defendants, with Vivint issuing and selling 20.6 million new shares of Vivint common stock to the public at $16 per share, raising approximately $329.6 million in gross proceeds ($309.4 million in net proceeds after deducting underwriting discounts, commissions and offering costs).

- 9 -

28.     At the time of the filing of this action, Vivint common stock was trading at below $11

per share, *a more than 32% decline from the IPO price*.

**CLASS ACTION ALLEGATIONS**

29.     Plaintiff brings this action as a class action on behalf of all those who purchased

Vivint common stock pursuant and/or traceable to the Registration Statement issued in connection

with the IPO (the "Class"). Excluded from the Class are defendants and their families, the officers

and directors and affiliates of defendants, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which defendants have

or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to plaintiff at this time and

can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of

members in the proposed Class. Record owners and other members of the Class may be identified

from records maintained by Vivint or its transfer agent and may be notified of the pendency of this

action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class, as all

members of the Class are similarly affected by defendants' wrongful conduct in violation of federal

law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class

and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

(a)     whether defendants violated the Securities Act;

- 10 -

(b)      whether the Registration Statement was negligently prepared and contained

inaccurate statements of material fact and omitted material information required to be stated therein;

and

(c)      to what extent the members of the Class have sustained damages and the

proper measure of damages.

34.      A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs

done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the Securities Act
### Against All Defendants

35.      Plaintiff incorporates ¶¶1-34 by reference.

36.      This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on

behalf of the Class, against all defendants.

37.      The Registration Statement for the IPO was inaccurate and misleading, contained

untrue statements of material facts, omitted to state other facts necessary to make the statements

made not misleading, and omitted to state material facts required to be stated therein.

38.      Defendants are strictly liable to plaintiff and the Class for the misstatements and

omissions.

39.      None of the defendants named herein made a reasonable investigation or possessed

reasonable grounds for the belief that the statements contained in the Registration Statement were

true and without omissions of any material facts and were not misleading.

- 11 -

40.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

41.     Plaintiff acquired Vivint common stock traceable to the IPO.

42.     Plaintiff and the Class have sustained damages.  The value of Vivint common stock has declined substantially subsequent to and due to defendants' violations.

43.     At the time of their purchases of Vivint common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

## COUNT II

### For Violation of §12(a)(2) of the Securities Act
### Against Defendants Vivint, Blackstone and the Underwriter Defendants

44.     Plaintiff incorporates ¶¶1-43 by reference.

45.     By means of the defective Prospectus, defendants Vivint, Blackstone and the Underwriter Defendants promoted and sold Vivint stock to plaintiff and other members of the Class.

46.     The Prospectus contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above.  The defendants named in this Count owed plaintiff and the other members of the Class who purchased Vivint common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  In the exercise of

reasonable care, the defendants named in this Count should have known of the misstatements and omissions contained in the Prospectus as set forth above.

47.     Plaintiff did not know, nor in the exercise of reasonable diligence could plaintiff have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired Vivint common stock.

48.     By reason of the conduct alleged herein, defendants Vivint, Blackstone and the Underwriter Defendants violated §12(a)(2) of the Securities Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Vivint common stock pursuant to the Prospectus sustained substantial damages in connection with their purchases of the stock. Accordingly, plaintiff and the other members of the Class who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to the defendants sued herein. Class members who have sold their common stock seek damages to the extent permitted by law.

### COUNT III

**For Violation of §15 of the Securities Act**
**Against Vivint, Blackstone and the Individual Defendants**

49.     Plaintiff incorporates ¶¶1-48 by reference.

50.     This Count is brought pursuant to §15 of the Securities Act against Vivint, Blackstone and the Individual Defendants.

51.     The Individual Defendants each were control persons of Vivint by virtue of their positions as directors and/or senior officers of Vivint. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Vivint. The Company controlled the Individual Defendants and all of

Vivint's employees. By virtue of its stock ownership, Blackstone controlled Vivint and the Individual Defendants.

52.      The Individual Defendants were each culpable participants in the violations of §11 of the Securities Act alleged in Count I above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed. Vivint was a culpable participant in violations of §§11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on its control of the Individual Defendants and having otherwise participated in the process which allowed the IPO to be successfully completed. Blackstone was a culpable participant in violations of §§11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on its control of Vivint and defendant Blackstone Advisory Partners and having otherwise directed the process which allowed the IPO to be successfully completed. Blackstone also attempted to sell more than 3 million shares of its own Vivint shares in the IPO.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  November 21, 2014

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY


                   SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
110 West "A" Street, Suite 750
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
frankj@johnsonandweaver.com

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)
scotth@johnsonandweaver.com

Attorneys for Plaintiff

I:\Vivint Solar\Pleadings\Cpt Vivint.docx

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Brennen Hyatt, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.        I have reviewed the complaint and authorize its filing.

2.        I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.        I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.        I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |

5.        I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and

travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of November, 2014.

DocuSigned by:

*Brennen Hyatt*

60AF727D9D44F1

Brennen Hyatt

## Statement of Ownership

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 10/01/2014 | 200 | $16 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |